# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7509 | **DATE** | 8/28/2003 |
| **CASE TITLE** | MONA WEI vs. CHICAGO STATE UNIVERSITY | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court grants defendant Chicago State University's Motion for Summary Judgment as to Wei's Title VII claims [18-1]. Defendant's Motion to Strike is denied as moot [29-1]. The Court hereby terminates this case.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | number of notices | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | AUG 2 9 2003 | | |
| ✓ | Docketing to mail notices. | date docketed | | 31 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | docketing deputy initials | | |
| | | | date mailed notice | |
| TBK | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MONA WEI,      )
     )
        Plaintiff,      )
     )
        v.      )      01 C 7509
     )
CHICAGO STATE UNIVERSITY,      )      Judge Ronald A. Guzmán
     )
        Defendant.      )

DOCKETED

AUG 2 9 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mona Wei ("Wei") has sued Chicago State University ("CSU"), her

former employer, and alleges employment discrimination, retaliation and hostile work

environment on the basis of national origin and gender in violation of Title VII, 42

U.S.C. § 2000e *et seq.* (1994).[1]  CSU has moved for summary judgment pursuant to Fed.

R. Civ. P. 56.  For the reasons provided in this Memorandum Opinion and Order, the

Court grants CSU's motion.

## FACTS

Unless otherwise noted, the following facts are undisputed.  Mona Wei is a

Chinese-American female hired by CSU in 1967 as a catalog librarian.  (Def.'s

LR56.1(a) ¶ 32.)  From 1985 until her retirement in July 2002, Wei was assigned to the

CSU archives during which time she attained the rank of full professor.  (*Id.* ¶¶ 33, 36.)

---

[1] This Court dismissed Wei's ADEA claim on June 24, 2002.

In August 2000, CSU hired Dr. Lawrence McCrank ("McCrank") as Dean of Library and Learning Resources later renamed Library & Information/Learning & Instructional Services ("LIS"). (*Id.* ¶ 9.) McCrank was responsible for reorganizing, restructuring and administering the LIS and library facility, which includes the archives. (*Id.* ¶¶ 10, 11.) Wei reported directly to McCrank in his capacity as Dean. (*Id.* ¶ 37.) During this time the University was also constructing a new library facility. (*Id.* ¶ 12.)

As a result of the reorganization plan, the archives staff was to be expanded from Wei and her assistant, Beverly Bond, to include an archives administrator, records management associate and student aides. (*Id.* ¶ 23.) CSU initiated recruitment for the administrative archivist sometime between June and September of 2001. (*Id.* ¶ 24; Pl.'s LR56.1(b)(3)(A) ¶ 24.) In September 2001, prior to the hiring of additional staff, Bond was transferred to another librarian leaving Wei as the sole employee assigned to the archives. (Def.'s LR56.1(a) ¶¶ 25, 78.) Wei perceived the loss of her assistant as an example of McCrank's unlawful discriminatory treatment of her. (*Id.* ¶ 78; Def.'s Ex. D, Wei Dep. at 60; Def.'s Ex. D, Letter from Wei to Lopardo of 12/11/01 at 2.)

In addition to the staff changes, McCrank reorganized library space which affected the archives. (*Id.* ¶ 20.) Due to a shortage of meeting space, he converted the archives reading room into a multi-use public conference room and relocated fifty-five bookcases from special collections into the archives work area. (*Id.* ¶¶ 69, 74.) According to Wei, these changes, along with the relocation of a copier, resulted in compromises to the convenience and functionality of the archives. (Pl.'s LR56.1(b)(3)(A) ¶ 75.) Although Wei acknowledged that it was within McCrank's responsibilities to carry out these changes under the reorganization plan, she contends

2

that his actions were motivated by a discriminatory intent based on her sex and national origin. (Def.'s LR56.1(a) ¶¶ 76, 77.)

Wei's first formal meeting with McCrank was held on August 30, 2000. (*Id.* ¶ 52.) Wei claims she was repeatedly, verbally attacked and told by McCrank that she and Bond were paid $150,000 annually and that they had contributed very little to the archives over the last fifteen years. (*Id.*) Following this meeting, Wei wrote a memo on September 11, 2000 to McCrank expressing her displeasure with his remarks and her perception that she was being attacked. (*Id.* ¶¶ 53, 54.) Her memo concluded with an inference that his attacks were motivated by a discriminatory attitude toward her based on race, gender and ethnicity. (*Id.* ¶ 53.)

On September 19, 2000, McCrank wrote a memo to Wei in an attempt to correct what he perceived was a misrepresentation of his remarks and to establish objectives for the archives while her job description and credit unit equivalency ("CUE")[2] assignment were under reconsideration. (*Id.* ¶ 58.) McCrank concluded his memo with a denial of any bias based on race, gender or ethnicity, stating his judgment focused on her technical and professional competence. (Def.'s Ex. D, Mem. from McCrank to Wei of 9/19/00 at 3.)

This generated yet another memo from Wei in which she attempted to clarify points from McCrank's memo of September 19, 2000 and dispel any inference that she was not capable of performing the job of archivist. (Pl's LR56.1(b)(3)(A) ¶ 58.) Wei acknowledged that during the August meeting, McCrank made no statements about her

---

[2] "A credit unit equivalence (CUE) is the credit a faculty member receives toward his/her workload for an instructional

race, sex or Chinese background. (Def.'s LR56.1(a) ¶ 59.)

CSU's position, which Wei disputes, is that the archives were deficient in a number of respects. (*Id.* ¶ 11; Def.'s Ex. E, Letter from CSU to EEOC at 21.) The expectations for Wei and the archives were communicated to her from the onset. (Def's LR56.1(a) ¶ 104.) Wei understood those expectations but disputed their feasibility, particularly with regard to implementation of encoded archival description. (*Id.* ¶¶ 104, 106-07; Pl.'s LR56.1(b)(3)(A) ¶ 107.) McCrank offered training in electronic records management to Wei when she indicated she had a lack of experience in this area. (Def.'s LR56.1(a) ¶ 108.)

Wei and McCrank met on April 11, 2001 concerning her annual evaluation and CUE assignment. (*Id.* ¶ 62; Pl.'s LR56.1(b)(3)(A) ¶ 61.) Wei claims that McCrank told her that if she would retire he could hire three additional staff members with her salary. (Def.'s LR56.1(a) ¶¶ 60, 61.) She also states that McCrank said "you should consider either resign[ation], retire[ment] or transfer" and "you should seriously consider retirement." (*Id.* ¶ 63.) Again, no comments were made in reference to Wei's sex or national origin. (*Id.* ¶ 65.) Wei perceived McCrank's demeanor as cold and threatening during that meeting. (Pl.'s LR56.1(b)(3)(A) ¶ 65.)

Early in May 2001, Wei filed a complaint with the EEOC alleging discrimination and a hostile work environment by McCrank and CSU based on age, sex and national origin. (Def.'s LR56.1(a) ¶¶ 39,40.) The charge did not include a claim for retaliation or

4

any allegations of retaliation. (*Id.* ¶ 41.) The EEOC issued its dismissal and notice to sue on June 29, 2001. (*Id.* ¶ 2.) At approximately the same time McCrank prepared Wei's annual evaluation for 2000-2001, and rated her performance as highly unsatisfactory. However, the evaluation according to Wei was not given to her until later in October. (Pl.'s LR56.1(b)(3)(A) ¶ 100.) The ratings decline was a significant departure from her previous evaluations. (Def.'s LR56.1(a) ¶ 99; Def.'s Ex. E, Letter from CSU to EEOC of June 1, 2001 at 23-33.) Wei admits that McCrank was not aware of her filing with the EEOC at the time he prepared her evaluation. (Def.'s LR56.1(a) ¶ 109.) Wei filed a grievance regarding her evaluation in November 2001, which resulted in its removal from her file. (Def.'s LR56.1(a) ¶¶ 110, 111.) Another evaluation, with a satisfactory rating, was prepared by the former Dean of Library and Learning Resources. (*Id.* ¶ 111.)

The reorganization and restructuring of LIS created five new departments and a new management infrastructure for LIS. (*Id.* ¶ 14.) As part of the archives restructuring, Wei's position was transferred to faculty archivist, resulting in a modification of her CUE assignment and removal of the supervision and coordination responsibilities she previously held. (*Id.* ¶¶ 91, 118.) This change did not adversely affect her pay or benefits. (*Id.* ¶¶ 140-41.) While acknowledging this move to be a lateral transfer, Wei also contends that this change in title and responsibility was a demotion. (*Id.* ¶¶ 115, 119, 124.) Although she grieved the changes to her CUE assignment, it was not pursued due to her subsequent retirement. (*Id.* ¶¶ 85, 97-98.) Wei did not apply for the administrative archivist position when it was posted. (*Id.* ¶ 129.)

On December 11, 2001, Wei sent a memo to CSU Provost, Dr. Genevieve

Lopardo, and iterated her concerns with McCrank's criticisms of her work and claimed continued harassment and discriminatory treatment. (*Id.* ¶ 114.) Finally, on April 30, 2002, Wei notified Dr. Lopardo of her retirement to be effective July 1, 2002 as a direct result of health problems related to McCrank's alleged discriminatory behavior toward her. (*Id.* ¶¶ 26, 38; Def.'s Ex. D, Letter from Wei to Provost of 4/30/02 at 1.)

Wei has identified two librarians as similarly situated employees who received more favorable treatment. (*Id.* ¶¶ 142, 154.) Both librarians are Caucasian, female and reported to Dean McCrank. (*Id.* ¶¶ 143-44, 155, 157.) Wei claims Kathy Matlin, a reference librarian, received a more favorable evaluation than she did. (*Id.* ¶¶ 145, 148.) Both Wei and Matlin did reference work, but some responsibilities of the two librarian positions were different. (*Id.* ¶¶ 149-50.) Wei also stated that Matlin's curriculum vitae update was essentially the same as hers but Matlin was not given the negative rating she received. (*Id.* ¶ 147.)

Beverly Meyers, a materials center librarian, had technically different duties, but, like Wei, was a librarian. (*Id.* ¶¶ 156, 158, 161-62.) Meyers was the recipient of Wei's transferred assistant Beverly Bond. (*Id.* ¶ 78; Def.'s Ex. D, Wei Dep. at 60.) Her CUE assignment was also modified by McCrank. (Def.'s LR56.1(a) ¶ 160.)

## DISCUSSION

### I.     CSU's Motion to Strike

Local Rule 56.1(a)(3) requires a party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle [it] to a judgment as a matter of law." In response, the party

opposing the motion must provide a concise response to the movant's statement which shall contain, in the case of disagreement, "specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR56.1(b)(3)(A). Local Rule 56.1 provides that unless factual disagreements are controverted with appropriate cite to the record by the opposing party, all material facts as set forth by the moving party will be deemed admitted. *Id.* "The Seventh Circuit has repeatedly upheld the strict enforcement of these rules." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).

CSU moves to strike Wei's response to ¶¶ 11, 23, 38, 58, 64, 68, 70, 74, 75, 84, 100, 105, 107 and 153 of CSU's Local Rule 56.1(a) Statement of Facts for failure to comply with the rule's requirements. CSU alleges that these responses are unsupported by a cite to the record, constitute conclusory opinions of the plaintiff or fail to admit or deny the specific statements of fact. (Pl.'s Mot. Strike ¶¶ 3-13.) The Court finds that in many instances Wei's responses have failed to comply with the local rule as to several of the challenged paragraphs. However, even if the Court were to consider Wei's deficient responses as having complied with LR 56.1, the Court would still grant CSU's Motion for Summary Judgment. Accordingly, the Court denies as moot CSU's Motion to Strike.

## II. Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining

7

whether a genuine issue of material fact exists, the facts and all justifiable inferences therefrom must be construed in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986). Where there is no genuine issue for trial, which could lead a reasonable trier of fact to find for the nonmovant, an entry of summary judgment is mandated. *Celotex Corp. v. Catrett,* 477 U.S. 317, 318 (1986).

### A. National Origin and Sex Discrimination Claims

Under Title VII, an employer is prohibited from discriminating against its employees on the basis of sex or national origin "with respect to [their] compensation, terms, conditions or privileges of employment." 42 U.S.C. § 2000e-(a)(1). To prevail in an employment discrimination action, the plaintiff may provide direct evidence of discriminatory intent with respect to the employer's alleged adverse employment actions against the employee. *Greenslade v. Chicago Sun-Times, Inc.,* 112 F.3d 853, 862 (7th Cir. 1997). "Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 616 (7th Cir. 2000). "Remarks and other evidence that reflect a propensity by the decisionmaker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination even if the evidence stops short of a virtual admission of illegality." *Venters v. City of Delphi,* 123 F.3d 956, 973 (7th Cir. 1997).

In the absence of direct evidence, the plaintiff must establish a *prima facie* case of intentional discrimination under the burden shifting analysis set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). This method requires the plaintiff to show that: (1) she was in a protected class; (2) she was meeting the legitimate

performance expectations of her employer; (3) she suffered an adverse employment action; and (4) that her employer treated similarly situated employees outside the protected class more favorably. *Greenslade,* 112 F.3d at 863.

Wei offers no admissions or statements by CSU that reflect a propensity by any decision-maker to evaluate employees based on national origin or sex. With no direct evidence of employment discrimination, Wei must proceed using the burden-shifting approach of *McDonnell Douglas*. CSU concedes that Wei meets the first and second elements of the *prima facie* case. The parties dispute whether the remaining third and fourth elements have been met.

### 1. Adverse Employment Action

Title VII does not explicitly define "adverse employment action" but includes the limitation or classification of an employee in a manner that deprives the employee of opportunities or "otherwise adversely affect[s] his status as an employee." 42 U.S.C. §§ 2000e-2(a)(1)-(2). The Seventh Circuit has interpreted the term quite broadly. *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir. 1996). A material adverse employment action has been found with termination of employment, demotion, reduction in pay or benefits, significantly reduced job responsibilities or "other indices that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.,* 993 F.2d 132, 136 (7th Cir. 1993). Although adverse job actions are not always characterized by monetary loss to the employee, the "change in the terms and conditions of employment must be more disruptive than a mere inconvenience." *Id.* "Not everything that makes an employee unhappy is an actionable adverse action." *Smart,* 89 F.3d at 441.

9

Wei asserts that she suffered adverse employment actions as a result of the removal of "various benefits of her work conditions," a dramatic reversal in the evaluation of her performance and the failure to assign her the appropriate credit unit equivalents (CUE) for her position. (Def.'s LR56.1(a) ¶¶ 67, 85, 99.)

First, Wei contends that an undeserved, negative performance evaluation was evidence of CSU's discriminatory conduct. (Def.'s LR56.1(a) ¶ 114.) The Seventh Circuit has repeatedly held that negative performance evaluations alone do not constitute adverse employment action. *Smart*, 89 F.3d at 442. The evaluation must result in some tangible negative consequences with regard to the terms and conditions of employment. *Id.* Wei prevailed in a grievance of her performance evaluation by Dean McCrank resulting in its removal from her personnel file. (Def.'s LR56.1(a) ¶¶ 110-11.) A replacement evaluation completed by another CSU Dean documented satisfactory performance by Wei. CSU's internal mechanism for addressing this issue effectively negated any adverse consequence Wei claims to have suffered. Without any tangible negative consequence realized as a result of the negative evaluation, it cannot be considered an adverse employment action.

Second, with regard to her work conditions, Wei claims that the transfer of her assistant and the conversion of the archive reading room to a multi-use conference room, the relocation of a copier and the transfer of fifty five book cases into the archives work area were discriminatory actions taken by CSU on the basis of her sex and national origin. (Def.'s LR56.1(a) ¶¶ 49, 51, 71; Pl.'s LR56.1(b)(3)(A) ¶¶ 74-75.)

In *Place v. Abbott Laboratories*, the Seventh Circuit found no adverse employment action where the employee lost her supervisory responsibilities, office and

10

telephone. 215 F.3d 803, 806 (7th Cir. 2000). By contrast, in *Collins v. Illinois*, adverse employment action was found where an employee was reassigned to a department with unclear responsibilities, lost her office, phone and business cards. 830 F.2d 692, 704 (7th Cir. 1987).

Unlike the employee's complete removal from her work area and assignment of new and ill-defined job responsibilities in *Collins*, Wei remained in her existing work area, albeit reconfigured, and maintained the bulk of her prior job responsibilities. While Wei's changed surroundings may not be so disruptive as to be considered, standing alone, an adverse employment action, the courts have considered the specific factual circumstances of a case and the totality of alleged adverse actions in deciding this question. *See Bryson v. Chicago State Univ.*, 96 F.3d 912, 915-16 (7th Cir. 1996).

In that context the Court considers Wei's final challenge - whether the assignment of different CUEs by Dean McCrank was an adverse employment action. The modified CUE assignment removed supervision and coordination of the archives department from Wei's position. (Def.'s LR56.1(a) ¶ 91.) CSU considered this move as a lateral transfer which Wei does not contest. (*Id.* at ¶ 119.) Nevertheless, Wei claims the reduction in these administrative responsibilities, coupled with a change in her title, equate to a demotion and adverse action. (Pl.'s LR 56.1(b)(3)(A) ¶ 23.) Under CSU's reorganization of the archives department, Wei went from a position as the sole archivist managing the entire spectrum of archival services to one of two archivists now reporting to a newly created position of Administrative Archivist. (*Id.*) As with her performance evaluation, Wei filed a grievance over the change in CUEs. The timing of her subsequent retirement from the university precluded a resolution of that complaint

11

through internal channels. (*Id.* at ¶ 98.)

Lateral transfers, which do "not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Williams v. Bristol-Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir. 1996). While Wei suffered no loss in pay or material benefits, the question is whether the change in job responsibilities is a demotion in form.

In *Bryson v. Chicago State University,* the court found an adverse employment action where a tenured professor lost her title and was banished from committee work. 96 F.3d at 915-16. The court considered the "indicia of job status and reward" in an academic setting, noting that the context of this environment may confer prestige and importance on factors that would not be so construed in other venues. *Id.* at 916.

Similarly, the transfer of the plaintiff, a consulting librarian, in *Collins,* noted *supra,* was considered a demotion based upon an unclear job assignment, loss of responsibility for specific projects and her listing as a library consultant in professional publications. 830 F.2d at 704. The *Collins* court, as in *Bryson,* gave weight to these indicia of job status in finding adverse employment action. *Id.*; *Bryson,* 96 F.3d at 915-16. These cases stand in contrast to the posture adopted in *Place,* discussed *supra. See Place,* 215 F.3d at 810. The *Place* court held there was no adverse employment action despite similar circumstances - a change in job responsibilities; loss of a supervisory position and less desirable working accommodations. *Id.*

Wei's change in title and the concomitant loss of her administrative responsibilities are characteristic of the types of actions found sufficient in *Collins* and *Bryson* to constitute adverse employment action. *Collins,* 830 F.2d at 704, *Bryson,* 96

12

F.3d at 915-16. However, an analogy can also be drawn between Wei's alleged adverse actions and those in *Place* that did not rise to the level of an adverse employment action. *Place*, 215 F.3d at 810. Considering the totality of the changes in Wei's working conditions and the revision to her job responsibilities and title, the Court concludes that there is a sufficient basis for a trier of fact to conclude she suffered an adverse employment action.

### 2.    Similarly Situated Employees

To meet the fourth element of the *prima facie* case, the plaintiff must show that similarly situated employees who were outside the protected class were more favorably treated. *McDonnell Douglas Corp.*, 411 U.S. at 802. A court must examine the context of a case and all relevant factors in determining whether two employees are similarly situated. *Radue*, 219 F.3d at 617. Consideration of relevant factors does not require an employee to "show complete identity in comparing himself to the better treated employee, but he must show substantial similarity." *Id.* Substantial similarity between employees exists with the presence of such factors as a common supervisor, similar standards of performance, analogous education and experience. *Id.*

Wei has identified two Caucasian females, Kathy Matlin, a reference librarian and Beverly Meyers, a materials center librarian as similarly situated employees who received more favorable treatment. Matlin, Meyers and Wei were all librarians and members of the faculty who reported to Dean McCrank prior to the reorganization of the LIS. (Def.'s LR56.1(a) ¶¶ 144, 146, 156-57.)

CSU refutes Wei's claim that these employees were similarly situated based on

13

distinctions within their respective job duties as librarians serving different areas within LIS. (Def.'s Mot. Summ. J. at 8-9.) Common sense dictates, however, that an employee occupying a unique position, such as existed here, can draw from a wider, yet comparable, circle of employees to establish this element of the *prima facie* case.

Wei's discrimination claims are based on national origin and sex. Because she has identified two similarly situated *female* employees as having been more favorably treated, she has failed to present similarly situated employees not in her protected class with regard to her gender discrimination claim and accordingly that claim must fail. As the two employees are not Asian, the analysis of disparate treatment proceeds on the basis of national origin only.

Wei asserts that Kathy Matlin received a more favorable evaluation than she did from Dean McCrank. (Def.'s LR56.1(a) ¶¶ 144, 147.) Additionally, Wei identifies Beverly Meyers as having been more favorably treated as the recipient of Wei's transferred assistant, Beverly Bond. (Def.'s LR56.1(a) ¶ 78; Def.'s Ex. D, Wei Dep. at 60.) Superficially, a poor evaluation and loss of her only assistant would be viewed as less favorable treatment of Wei, notwithstanding a legitimate basis for it. Because CSU limits its argument on this element to the differences in job responsibilities between Wei and the similarly situated persons identified, CSU has not addressed whether either Matlin or Meyers were treated more favorably.[3] Thus, in viewing all facts and justifiable inferences therefrom in a light most favorable to the plaintiff, the Court finds that Wei has identified similarly situated employees outside of her protected class who have been

---

[3]CSU states that Bond was transferred based on her computer skills, interest in early child development and department need. However, they do not address Wei's need or the impact the loss of staff would have on the archives to demonstrate this action was not more favorable treatment of Meyers.

14

more favorably treated.

### 3.    Pretext

Assuming a *prima facie* case is established, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for its actions. *Stutler v. Illinois Dep't of Corr.*, 263 F.3d 698, 702 (7th Cir. 2001). If the defendant sustains this burden, the plaintiff must provide evidence that the reason was a mere pretext for the employment action. *Id.* "[A] reason honestly described but poorly founded is not a pretext as that term is used in the law of discrimination." *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997). The proffered reason must be factually baseless, not the actual motivation for the action, or insufficient to motivate the action. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999).

The Seventh Circuit in *Abioye v. Sundstrand Corp.* granted summary judgment for a Title VII defendant, regardless of whether a *prima facie* case had been established, based on plaintiff's failure to create a genuine issue of material fact as to age, race and national origin discrimination. 164 F.3d 364, 368 (7th Cir. 1998). The court stated "when the defendant has proffered an explanation for [its actions] that the court determines to be non-pretexual, the court may avoid deciding whether the plaintiff has met his *prima facie* case and instead decide to dismiss the claim because there is no showing of pretext." *Id.*

Although Wei has established a *prima facie* case of discrimination, CSU has offered a legitimate, non-discriminatory reason for its actions. In August 2000, CSU undertook a restructuring and reorganization of its library services concurrent with the

15

construction of a new library facility that resulted in changes to the work conditions and position of the University Archivist. (Def.'s LR56.1(a) ¶¶ 10, 12, 14, 118.) Wei does not contest that McCrank was charged by CSU with the responsibility for the LIS restructuring. (Pl.'s LR56.1(b)(3)(A) ¶ 10.)

The alteration of space and the modifications to staff CUE assignments were not limited to Wei alone. (Def's. LR56.1(a) ¶ 160.) Adjustments were made to the CUE assignment for faculty librarian, Beverly Meyers, as well. (*Id.*) CSU, in support of its position that the actions taken were directed at the library including the archives and not at Wei personally, references the letter from Kathy Matlin, librarian and faculty union representative, to the EEOC expressing the entire library faculty's concerns regarding various position postings and search procedures undertaken by McCrank. In the face of this broader staff dissatisfaction with McCrank's approach, Wei provides no evidence which links the changes to her particular position responsibilities to a discriminatory motive based on her sex or national origin.

While the parties dispute whether the archives were deficient in operation, Wei's response to the Motion for Summary Judgment states "the constraints around the University Archives/Records Management operations were, and are, very simple: lack of money, lack of personnel and lack of space." (Pl.'s Mem. Opp'n Summ. J. at 24.) Wei's own comment supports the non-discriminatory reason offered and the attention CSU was placing on the library and archival restructuring and facility renovation.

Wei states in response to CSU's contention that the archives did not meet appropriate standards that "[t]he archives cannot be functional nor can it provide better and satisfactory services to its patrons if the operation is deficient." (Pl.'s

16

LR56.1(b)(3)(A) ¶ 11.) Once again, Wei's own statement contradicts her acknowledged efforts to seek outside assistance from various state resources to assist in updating archives record retention and disposition. (*Id.*) Wei also contends that the conversion of the archives reading room to a multi-use conference room is inconsistent with SAA Guidelines. (*Id.*) Even if all of this were true, it does not establish a genuine issue as to a material fact regarding pretext.

Although Wei contends that McCrank's negative evaluation of her performance was a discriminatory action, she does not rely on this issue in attempting to establish pretext. (Pl.'s Mem. Opp'n. Summ. J. at 22-24.) This is consistent with the Seventh Circuit holding in *Fortier*, which states "[a]n employee's self-serving statements about his ability are insufficient to contradict an employer's negative evaluation and do not create a material dispute about the employer's honesty or establish pretext." *Fortier*, 161 F.3d at 1114 (citing *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992) (internal quotations omitted).

Even if McCrank's assessment of Wei's capabilities and performance had been erroneous and even if his assessment had been a factor in the reorganization plan, to establish pretext Wei must show not a misguided decision but rather discriminatory actions taken on the basis of her national origin and sex. While the Court recognizes that an opportunity exists for an employer to use a restructuring or RIF to conceal discriminatory treatment, here, the record simply does not provide any evidence from which to reasonably infer a connection between the complained of actions with Wei's gender or national origin. For these reasons, CSU's Motion for Summary Judgment with respect to Wei's discrimination claim is granted.

17

## B.    Harassment Claim

"Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule and insult." *Meritor Sav. Bank, FSB, v. Vinson,* 477 U.S. 57, 65 (1986). A hostile work environment exists when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive and is both objectively and subjectively offensive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993). Whether harassment rises to the level of a hostile work environment depends upon the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

Wei asserts that the cumulative effects of McCrank's statements and actions are sufficient to support her claim of a hostile work environment. (Def.'s LR56.1(a) ¶ 3.) CSU does not dispute that Wei subjectively believes this to be the case. The Court must examine whether McCrank's conduct created a hostile work environment under the objective standard.

Wei points to McCrank's remarks that if she retired he could employ three additional staff members with her salary; that she should consider a transfer or retirement and that she and Ms. Bond had contributed very little to the archives. (*Id.* ¶¶ 48, 54.) As part of an alleged campaign to get rid of Wei, he criticized her performance in her evaluation, her workspace was altered, her assistant transferred and her title and CUE assignment modified. (*Id.* at ¶¶ 49-50, 78, 102.)

Title VII does not guarantee a perfect work environment. *Hilt-Dyson v. City of Chicago,* 282 F.3d 456, 463 (7th Cir. 2002). "Conduct that is not severe or pervasive

18

enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview." *Harris*, 510 U.S. at 21. This premise must be considered when assessing whether Wei's complaint of harassment meets the standard. The negative statements attributed to McCrank, if taken as true, do not amount to harassment of the kind to be actionable under Title VII.

In *Cerros*, the court found an objectively hostile work environment where an employee was subjected to frequent and severe verbal harassment, racial epithets and racist graffiti by his co-workers and supervisor. *Cerros v. Steel Tech., Inc.*, 288 F.3d 1040, 1046-47 (7th Cir. 2002). "It included racial remarks and symbols such as . . . 'Go Back to Mexico,' 'Tony Cerros is a spic,' 'KKK,' and 'White Power.'" *Id.* at 1042. Further, Cerros' slashed tires and complaints of harassment to management were not investigated. *Id.*

In contrast, in *Aguilera v. Village of Hazel Crest*, 234 F. Supp. 2d 840, 847-48 (N.D. Ill. 2002), the criticism of an employee's communication skills in his performance evaluation and four derogatory ethnic remarks by co-workers were insufficient to constitute a finding of hostile work environment. The negative comments concerning his communication capabilities were not directed at his ethnicity. *Id.* at 847. The court also considered the frequency of the ethnic remarks and their non-threatening, "offhand" nature to conclude that "the type of hellish work environment prohibited by Title VII" was not present. *Id.* at 848.

The facts in the instant case are more similar to *Aguilera* than to *Cerros*. As in *Aguilera*, the criticisms levied in Wei's performance evaluation were not directed at her

national origin. *See Aguilera*, 234 F. Supp. 2d at 847. And, unlike management's failure to act in *Cerros*, Wei successfully pursued the established mechanism for grieving her performance evaluation that resulted in its removal and replacement with one of a satisfactory rating. *See Cerros*, 288 F.3d at 1042.

Lastly, the changes to Wei's CUE assignment, title and loss of supervision of an assistant fall short of meeting the threshold of abuse required to demonstrate the existence of a hostile work environment. While Wei characterized these actions as discriminatory and unfounded based on her perceived performance, they do not constitute actions that would be objectively viewed as interfering with her ability to function in her position.

Beyond a finding of objectively hostile work conditions, the complained of actions must relate to and be offensive because of a protected characteristic - Wei's national origin or sex. Here, plaintiff failed to raise a genuine issue as to the material fact that the alleged derogatory remarks and job actions have resulted from any discrimination based on gender or national origin. Because Wei has not established an objectively hostile work environment, this Court grants CSU's motion with respect to the harassment claim.


**C.    Constructive Discharge**

Although not expressly set out as a separate claim, Wei incorporates language in her complaint and response that infers she has been constructively discharged. (Pl.'s Compl. ¶ 30, Pl.'s Mem. Opp'n. Summ. J. at 32.) Wei states: "[McCrank's] actions destroyed plaintiff's health to the point that she had no choice but to retire. . . [A]ctions

taken by the defendant . . . are calculated to "squeeze" plaintiff into retirement." (*Id.*)
To state a claim for constructive discharge, the plaintiff must show that working
conditions were so intolerable as a result of unlawful discrimination that a reasonable
person would be forced to resign. *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir. 1996).
Working conditions "must be even more egregious than the high standard for [a] hostile
work environment." *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1049 (7th Cir.
2000).

Constructive discharge has been found where plaintiff's boss brandished a pistol
and held it to plaintiff's head and constantly made racist remarks. *Taylor v. Western & S.
Life Ins. Co.*, 966 F.2d 1188, 1191 (7th Cir. 1992). The Seventh Circuit also found
constructive discharge where an employer packed an employee's office contents and
moved it to storage, disclosed to the employee a plan for her termination and created a
general environment hostile to the employee's religious beliefs. *EEOC v Univ. of
Chicago Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002).

Wei's claim of a hostile work environment includes as a basis for her constructive
discharge McCrank's remarks that she consider retirement or transfer; that her
contributions to the archives were minimal and that her performance was lacking. In
addition, she points to the effects of the reorganization - her change in title and
responsibilities; the alteration of the archives space and the loss of her assistant as the
impetus for her forced retirement. As this Court has found the statements and actions
cited by Wei have not risen to the level of a hostile work environment, by default they
are insufficient to meet the higher standard of egregious behavior required to support a
claim of constructive discharge.

## D.     Retaliation Claim

CSU claims Wei cannot base her Title VII claims for relief on retaliation because she failed to allege retaliation in her EEOC charge filed on May 11, 2001. (Def.'s LR56.1(a) ¶ 41.) CSU further contends that Wei is time barred from including the retaliation charge in the instant suit because she has exceeded the 300-day statutory time limit between the discriminatory act and the filing of the EEOC charge necessary for ultimate recovery under Title VII. (*Id.*); 42 U.S.C. § 2000e-5(e)(1). Wei states that she did not include a claim for retaliation because she was told she could not do so before or at the same time as the filing of her employment discrimination charge. (Pl's LR56.1(b)(3)(A) ¶ 41.) Additionally, she claims retaliation is not listed as one of the reasons for allegations of employment discrimination that the EEOC can investigate. (*Id.*)

A prerequisite to filing suit under Title VII is the filing of an EEOC charge concerning the aggrieved actions in an attempt to resolve disputes without litigation. *Chambers v. Am. Trans Air Inc.,* 17 F.3d 998, 1003 (7th Cir. 1994). A plaintiff may pursue a claim for retaliation under Title VII that is "not explicitly included in an EEOC complaint only if her allegations fall within the scope of the charges contained in the EEOC complaint." *Cheek v. Peabody Coal Co.,* 97 F.3d 200, 202 (7th Cir. 1996). To ascertain whether a subsequent action falls within the scope of the earlier EEOC complaint, a court considers whether the charges are "like or reasonably related to those of the EEOC complaint." *Id.* (internal quotations omitted). If the charges are related, the court then asks "whether the current claim could reasonably have developed from the

22

EEOC's investigation of the charges before it." *Id.*

Wei's EEOC charge alleges harassment, a hostile work environment and discrimination under violation of Title VII on the basis of national origin and sex. It also included a complaint of age discrimination under the ADEA.[4] The text portion of the complaint does not reference directly or by inference any retaliatory action by her former employer. The complaint requests the charging party to check the appropriate boxes indicating the cause of the discrimination. Contrary to the assertions of Wei, the EEOC Charge form explicitly provides "retaliation" as an option under cause of discrimination. Wei has checked sex, age and national origin. Notably, the box for retaliation was left unmarked. (Def.'s Ex. E, EEOC Charge 210A13215 at 3.) Further, there is no reference to retaliation contained in the interview conducted with Wei by the EEOC. (Def.'s Ex. E, Interview of Wei by EEOC at 12.)

In *O'Rourke v. Continental Casualty Co.,* 983 F.2d 94, 97 (7th Cir. 1993), the Seventh Circuit held that retaliation and age discrimination are unrelated as a matter of law. The court explained that retaliation is essentially the "adverse consequence[s] deliberately attached to the exercise of a right protected by law." *Id.* Where the charge does not include the exercise of a protected right or any resulting adverse consequence, retaliation cannot be presumed. *Id.* As the claim of retaliation is not like or reasonably related to the discrimination charged, the Court finds that her retaliation claim is not within the scope of the charge, and therefore, Wei is barred from raising it in this litigation.

---

[4] *See supra* FN1.

23

## CONCLUSION

For the foregoing reasons, the Court grants defendant Chicago State University's Motion for Summary Judgment as to Wei's Title VII claims [18-1]. Defendant's Motion to Strike is denied as moot [29-1]. The Court hereby terminates this case.

**SO ORDERED**

**ENTERED:**  8/28/03

**HON. RONALD A. GUZMAN**
**United States Judge**

24